"UNDER SEAL"

FILED
CHARLOTTE, NC

MAY 18 2021

US DISTRICT COURT
WESTERN DISTRICT OF NC



UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Docket No.: 3:21-cr-132-FDW |
| | ) | |
| v. | ) | BILL OF INDICTMENT |
| | ) | |
| KEON I. TAYLOR | ) | Violations: 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1014 |
| | ) | 18 U.S.C. § 1028 |
| | ) | 18 U.S.C. § 1028A |
| | ) | |

THE GRAND JURY CHARGES:

At the specified time and at all relevant times:

1.      From at least March 2020 through February 2021, the Defendant, KEON I. TAYLOR ("TAYLOR"), engaged in a scheme to defraud the United States Department of Labor, the North Carolina Division of Employment Security, and the States of Tennessee, Texas, Ohio, Massachusetts, Nevada, and Arizona by filing fraudulent claims for COVID-19-related unemployment insurance (UI) benefits in the names of identity theft victims. During the scheme, TAYLOR fraudulently obtained more than $219,000 in fraudulent unemployment benefits by filing fraudulent claims in the names of more than 35 victims and submitted numerous additional applications seeking fraudulent UI benefits. Additionally, TAYLOR fraudulently applied for three Economic Injury Disaster Loans from the Small Business Administration using false information.

Background of the Unemployment System

2.      The Social Security Act of 1935 initiated the UI system, which is operated and managed by each state at the direction of the federal government, specifically, the United States Department of Labor (DOL). In the majority of states, benefit funding is based solely on a tax imposed on employers. However, DOL funds all substantive and administrative costs associated with each state's UI system, which is run by a state agency in the respective state. The UI system is designed to provide benefits to persons who are out of work due to no fault of their own, and who meet other eligibility requirements of state laws.

3.      Eligibility for UI, benefit amounts, and the length of time benefits are available is determined by individual state law. In all states, individual claimants must be eligible for employment and actively searching for employment while receiving UI benefits.

4.      A claimant receives UI benefits by completing an application at a local "one-stop center," by telephone, or online at each state's website. A claimant must provide the claimant's

1

name, date of birth, social security number, home address, and other personal information. On a weekly or bi-weekly basis, the claimant then files for weekly payment benefits by certifying that the claimant is unemployed, eligible for benefits, and is seeking employment.

5. The state agencies authorize their financial services sections to release unemployment compensation funds in the form of either: (a) a state contracted debit card mailed to the applicant; (b) a direct deposit into a pre-paid debit card account; (c) a direct deposit into the claimant's designated bank account; or (d) in rare cases, some states will issue a check, if requested.

6. As relevant to this Indictment, direct deposits of UI funds were completed through the automated clearing house ("ACH"), an electronic funds transfer system that facilitates payments within the United States.

## COVID-19, the National Emergency, and FPUC

7. According to the United States Centers for Disease Control and Prevention (CDC), Coronavirus Disease 2019 ("COVID-19'") is a respiratory illness that can spread from person to person. The virus that causes COVID-19 is a novel coronavirus that was first identified during an investigation into a 2019 outbreak in Wuhan, China. COVID-19 can attack human lungs and kill infected persons, especially those who have certain risk factors identified by the CDC.

8. On March 13, 2020, President Donald J. Trump issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak ("the Emergency Proclamation"). The Emergency Proclamation noted that "on March 11, 2020, the World Health Organization announced that the COVID-19 outbreak can be characterized as a pandemic, as the rates of infection continue to rise in many locations around the world and across the United States." Further, "[t]he spread of COVID-19 within our Nation's communities threatens to strain our Nation's healthcare systems."

9. At all relevant times, Section 2104 of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281(March 27, 2020), entitled "Emergency Increase in Unemployment Compensation Benefits," provided for an additional $600 weekly payment, known as "Federal Pandemic Unemployment Compensation" or "FPUC," to certain eligible individuals who were receiving other UI benefits under state law.

10. At all relevant times, Arizona, Massachusetts, North Carolina, Nevada, Ohio, Tennessee, and Texas paid FPUC, a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5122).

## Relevant Entities

11. Bank of America ("BOA"), Sutton Bank, Wells Fargo Bank, and Woodforest National Bank ("the Victim Banks") are financial institutions whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC").

12. The Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

### Economic Injury Disaster Loans from the SBA

13. The SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. The CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

14. One of the programs modified in response to the COVID-19 outbreak was an expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance, including advances, for small businesses and other eligible entities. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds are not intended to replace lost sales or profits or for expansion of a business. The CARES Act specifically expanded eligibility for the EIDL program to assist business entities that suffered "substantial economic injury" from COVID-19 and changed the definition of "disaster" to include "an emergency involving Federal primary responsibility determined to exist by the President under the section 5191(b)" of the Stafford Act. Previously, on March 13, 2020, the President had declared that the ongoing COVID-19 pandemic was an emergency under Section 501(6) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §5121-5207. After March 13, 2020, the President approved major disaster declaration requests under the Stafford Act for all 50 states, the District of Columbia, Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands (authorized under Stafford Act Section 401).

15. Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

### The Scheme to Defraud

16. From in or about March 2020 and continuing until in or about February 2021, in the Western District of North Carolina and elsewhere, TAYLOR did voluntarily and intentionally (1) participate in a scheme and artifice to defraud with knowledge of its fraudulent nature and (2) obtain the money and property by means of false and fraudulent pretenses, representations, and promises (collectively, "the scheme to defraud").

## Manner and Means of the Scheme to Defraud

17. It was part of the scheme to defraud that TAYLOR obtained the identity information of real persons ("Identity Theft Victims"), including names, Social Security Numbers, dates of birth, and addresses, among other information (collectively, "personal identifying information" or "PII") over the Internet, and elsewhere.

18. It was further part of the scheme to defraud that TAYLOR used the PII of identity theft victims to file fraudulent UI benefit claims with the State of North Carolina. TAYLOR electronically submitted or caused to be submitted fraudulent unemployment benefits claims in the names of at least thirteen Identity Theft Victims and obtained fraudulent payments totaling more than $139,000. For example, TAYLOR submitted or caused to be submitted the fraudulent unemployment benefits claims to the state of North Carolina, as identified in the chart below:

|    | UI APPLICATION DATE | UI STATE | WHERE FUNDS WERE DEPOSITED | AMOUNT DEPOSITED | VICTIM |
|----|---------------------|----------|----------------------------|------------------|--------|
| a. | 6/3/2020  | NC | Sutton Bank card | $7,250.00  | Z.C.  |
| b. | 5/26/2020 | NC | BOA pre-paid card | $16,224.00 | J.R.  |
| c. | 6/10/2020 | NC | BOA pre-paid card | $2,850.00  | A.M.  |
| d. | 5/25/2020 | NC | BOA pre-paid card and Wells Fargo Acct *1588 | $15,600.00 | B.B. |
| e. | 6/15/2020 | NC | BOA pre-paid card and Chime pre-paid card | $13,450.00 | B.W. |
| f. | 6/19/2020 | NC | BOA pre-paid card | $18,900.00 | Br.W  |
| g. | 6/3/2020  | NC | BOA pre-paid card | $9,648.00  | K.Z.  |
| h. | 6/2/2020  | NC | BOA pre-paid card | $3,800.00  | J.W.  |
| i. | 5/17/2020 | NC | Sutton Bank card | $950.00    | M.M.  |
| j. | 6/14/2020 | NC | BOA pre-paid card | $20,050.00 | T.K.  |

19. It was further part of the scheme to defraud that TAYLOR used the PII of identity theft victims to file fraudulent UI benefit claims in other states including Nevada, Arizona, Tennessee, Texas, Ohio, and Massachusetts. TAYLOR electronically submitted by interstate wire, and caused to be submitted, fraudulent unemployment benefits claims in the names of more than twenty Identity Theft Victims and obtained fraudulent payments, through interstate wires, totaling more than $200,000. For example, TAYLOR submitted or caused to be submitted the fraudulent unemployment benefits claims to the states identified below as further identified in the chart below:

|   | UI APPLICATION DATE | UI STATE | WHERE FUNDS WERE DEPOSITED | AMOUNT DEPOSITED | VICTIM |
|---|---|---|---|---|---|
| a. | 6/22/2020 | NV | Sutton Bank card | $3,067.00 | C.D. |
| b. | 6/27/2020 | AZ | Sutton Bank card | $10,242.00 | C.T. |
| c. | 6/27/2020 | AZ | Sutton Bank card | $9,438.00 | B.R. |
| d. | 5/7/2020 | MA | Woodforest Acct *0259 | $6,736.00 | S.R. |
| e. | 5/8/2020 | MA | Woodforest Acct *9863 | $4,335.00 | T.F. |

20. It was further part of the scheme to defraud that, on or about January 1, 2021, TAYLOR fraudulently applied for, or caused to be applied for, an EIDL from the SBA given application number *3299 using the name of Identity Theft Victim A.G. and a purported tutoring business using false business information.

21. It was further part of the scheme to defraud that, on or about December 23, 2020, TAYLOR fraudulently applied for an EIDL from the SBA given application number *9930 in the name of Tristar Building Services using false business information.

## COUNT ONE
Wire Fraud Scheme (18 U.S.C. §1343)

22. Paragraphs 1 through 21 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

23. Between in or about March 2020 and continuing through February 2021, in the Western District of North Carolina, and elsewhere, the defendant,

KEON I. TAYLOR

with the intent to defraud, did knowingly and intentionally devise the above described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud, did cause to be transmitted by means of wire communication in interstate commerce any writing, signal, or sound for the purposes of executing said scheme and artifice.

All in violation of Title 18, United States Code, Section 1343.

## COUNTS TWO THROUGH EIGHT
## Wire Fraud (18 U.S.C. § 1343)

24. Paragraphs 1 through 21 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

25. On or about the dates set out below, in the Western District of North Carolina, and elsewhere, the defendant,

**KEON I. TAYLOR,**

knowingly executed and attempted to execute the above described scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, would and did transmit and cause to be transmitted from Charlotte, North Carolina by means of wire communication in interstate commerce, the following fraudulent unemployment benefit claims to the states identified below causing the payments to be issued as indicated below:

| COUNT | UI APPLICATION DATE | UI STATE | WHERE FUNDS WERE DEPOSITED | AMOUNT DEPOSITED | VICTIM |
|---|---|---|---|---|---|
| TWO | 6/27/2020 | AZ | Sutton Bank card | $10,242.00 | C.T. |
| THREE | 6/27/2020 | AZ | Sutton Bank card | $9,438.00 | B.R. |
| FOUR | 6/26/2020 | AZ | Sutton Bank card | $9,438.00 | T.S. |
| FIVE | 7/15/2020 | AZ | BOA Pre-Paid card | $1,467.00 | H.S. |
| SIX | 5/7/2020 | MA | Woodforest Acct *0259 | $6,736.00 | S.R. |
| SEVEN | 5/8/2020 | MA | Woodforest Acct *9863 | $4,335.00 | T.F. |
| EIGHT | 5/12/2020 | MA | Woodforest Acct *9863 | $6,770.00 | R.R. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT NINE
### False Statements to the SBA (18 U.S.C. § 1014)

26. Paragraphs 1 through 21 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

27. On or about January 1, 2021, in the Western District of North Carolina and elsewhere, the defendant,

**KEON I. TAYLOR**

did knowingly make and cause to be made a false statement or report for the purpose of influencing the action of the SBA in connection with the EIDL program, which it administers pursuant to a provision of the Small Business Act. The defendant submitted a fraudulent EIDL Application ending in *3299, using the identity of Victim A.G. in the name of a purported tutoring business, seeking funds totaling $21,600. In truth and in fact, and as the defendant well knew, Victim A.G. had not submitted the application and the information contained therein was fictitious.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT TEN
### False Statements to the SBA (18 U.S.C. § 1014)

28. Paragraphs 1 through 21 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

29. On or about December 23, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**KEON I. TAYLOR**

did knowingly make and cause to be made a false statement or report for the purpose of influencing the action of the SBA in connection with the EIDL program, which it administers pursuant to a provision of the Small Business Act. The defendant submitted a fraudulent EIDL Application ending in *9930, using his own name and a business named Tristar Building Services, seeking funds totaling $150,000. In truth and in fact, and as the defendant well knew, the application and the information contained therein was fictitious.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT ELEVEN
## Aggravated Identity Theft (18 U.S.C. §1028A)

30. Paragraphs 1 through 21 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

31. On or about May 17, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**KEON I. TAYLOR**

did knowingly use, without lawful authority, a means of identification of another person, namely, M.M., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud in violation of 18 U.S.C. § 1343 as alleged in Count One, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT TWELVE
## Aggravated Identity Theft (18 U.S.C. §1028A)

32. Paragraphs 1 through 21 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

33. On or about June 27, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**KEON I. TAYLOR**

did knowingly use, without lawful authority, a means of identification of another person, namely, C.T., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud in violation of 18 U.S.C. § 1343 as alleged in Count Two, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT THIRTEEN
Aggravated Identity Theft (18 U.S.C. §1028A)

34. Paragraphs 1 through 22 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

35. On or about January 1, 2021, in the Western District of North Carolina and elsewhere, the defendant,

**KEON I. TAYLOR**

did knowingly use, without lawful authority, a means of identification of another person, namely, A.G., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, fraud on the SBA in violation of 18 U.S.C. § 1014 as alleged in Count Nine, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT FOURTEEN
Production, Transfer, or Possession of a Document Making Implement or Authentication Feature
(18 U.S.C. § 1028(a)(5))

36. Paragraphs 1 through 21 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

37. On or about February 10, 2021, in Mecklenburg County, within the Western District of North Carolina, the defendant,

**KEON I. TAYLOR**

did knowingly produce, transfer or possess a document making implement or authentication feature, to wit, holographic ink cartridge(s); holographic sticker(s); plastic identification card blank(s); and identification card template computer software, with the intent such document making implement or authentication feature would be used in the production of a false identification document or another document making implement or authentication feature which would be so used, and the production, transfer, or possession of said authentication feature or document making implement was in or affecting interstate commerce, in that one or more of the above-described document making implement or authentication feature was manufactured outside the state of North Carolina.

All in violation of Title 18, United States Code, Sections 1028(a)(5), (b)(1)(C), and 2.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a. All property which constitutes or is derived from proceeds of the violations set forth in Counts One through Ten, and/or Count Fourteen of this Bill of Indictment;
    b. All illicit authentication features, identification documents, document-making implements, and/or means of identification connected to Count Fourteen; and
    c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds set forth above:

    a. a money judgment in the amount of at least approximately $252,849 in proceeds of the violations set forth in Counts One through Ten and Count Fourteen.

A TRUE BILL:

[signature redacted]

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

JENNY G. SUGAR
ASSISTANT UNITED STATES ATTORNEY